## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

**BARRY SEWELL**                                    **CIVIL ACTION**

**VERSUS**                                              **NO. 21-2376-WBV-KWR**

**ST. BERNARD PARISH GOVERNMENT**        **SECTION: D (4)**

### ORDER and REASONS

Before the Court is the Motion for Summary Judgment of Plaintiff, filed by Barry Sewell.[1]  St. Bernard Parish Government opposes the Motion,[2] and Sewell has filed a Reply.[3]  The Court has also allowed both parties to file supplemental memoranda in further support of their respective positions.[4]

After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED in part** and St. Bernard Parish Government is liable to Sewell for $1,665,661.48, plus pre-judgment and post-judgment interest on that amount, on Sewell's breach of contract claim.  The Motion is **DENIED** to the extent that Sewell seeks an award of attorney's fees.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This case involves a contract dispute between Barry Sewell doing business as St. Bernard Trucking and St. Bernard Parish Government ("SBPG"), concerning a contract for emergency drainage and sewage removal.[5]  The following facts are

---

[1] R. Doc. 49.
[2] R. Doc. 53.
[3] R. Doc. 56.
[4] *See,* R. Docs. 87, 88, 89, & 90.
[5] *See*, R. Doc. 6; R. Doc. 80 at p. 7; R. Doc. 49-4.

uncontested.[6]  On May 20, 2021, St. Bernard Trucking entered into a contract with SBPG for emergency drainage and sewage removal, effective June 1, 2021.[7]  Sewell signed the contract as the owner of St. Bernard Trucking.[8]  The contract required St. Bernard Trucking to assemble a fleet of trucks, supplies, and manpower sufficient to perform the removal and transport of raw sewage on a "24/7 basis" in the event an emergency rendered the sewer treatment infrastructure inoperable.[9]

On August 29, 2021, Hurricane Ida made landfall in Louisiana and, as a result, Governor John Bel Edwards declared a state of emergency.[10]  On August 30, 2021, SBPG notified and directed Sewell to mobilize equipment and vehicles immediately to pump, haul, and dump into designated areas water and sewage.[11]  SBPG did not indicate a total price or a total number of hours requested from Sewell, and instead directed Sewell to begin work and to work as directed by SBPG and its field monitors, such as Steve Price.[12]  SBPG also did not require Sewell to provide services for a specific time period, since the duration of the project was undetermined at that time.[13]  According to the parties, the removal and hauling of water and sewage was necessary because the sewer system pumps were not operational after the storm due to a lack of electricity to the pumps.[14]  At SBPG's request, St. Bernard Trucking began mobilizing a fleet of trucks to manually remove sewage from below the ground to be

---

[6] *See*, R. Doc. 80 at pp. 7-10.
[7] R. Doc. 80 at p. 7.  *See*, R. Doc. 6 at ¶ 4; R. Doc. 49-4.
[8] *See*, R. Doc. 49-4 at p. 6; R. Doc. 53-7 at p. 4.
[9] R. Doc. 80 at p. 7.
[10] *See*, R. Doc. 49-5.
[11] R. Doc. 80 at p. 7.
[12] *Id*. at p. 8.
[13] *Id*.
[14] *Id*.

loaded and transported to functioning facilities, in accordance with the contract, and it hired subcontractors, including Wise Environmental Services, Inc. ("Wise Environmental"), to provide emergency drainage and sewage removal.[15]   SBPG neither requested verbally, nor required as part of the contract, that St. Bernard Trucking possess a commercial contractor's license.[16] Neither Sewell nor St. Bernard Trucking possessed a commercial contractor's license from the Louisiana State Licensing Board for Contractors (hereafter, the "LSLBC") for the period of time that work was performed.[17]   Wise Environmental, which rendered emergency drainage and sewage removal services in St. Bernard Parish from August 31, 2021 through September 24, 2021, also did not possess a commercial contractor's license from the LSLBC when it performed these services.[18] On August 31, 2021, Sewell and his subcontractors, including Wise Environmental, began providing the emergency sewage removal services to SBPG.[19]   SBPG does not dispute that St. Bernard Trucking performed all services requested by SBPG under the contract, nor is there any dispute regarding the quality of the services provided by St. Bernard Trucking or its subcontractors.[20]

Beginning on September 9, 2021, St. Bernard Trucking submitted three invoices to SBPG totaling $1,802,669.16 for emergency sewage hauling and disposal services performed from August 31, 2021 through September 9, 2021, from September

---

[15] *Id*.
[16] R. Doc. 49-3.
[17] R. Doc. 80 at p. 8.
[18] *Id*. at p. 10.
[19] *Id*.
[20] *Id*.

10, 2021 through September 19, 2021, and from September 20, 2021 through September 24, 2021.[21]  In response, SBPG provided St. Bernard Trucking with a spreadsheet from Steve Price of PD Consulting, who purportedly reviewed and reconciled St. Bernard Trucking's invoices.  At SBPG's request, St. Bernard Trucking revised its invoices to reflect the reconciled amount of $1,665,661.48 "in order to avoid delay or dispute regarding the charges submitted."[22]  After completing drainage and sewage removal services in St. Bernard Parish, Wise Environmental sent Sewell d/b/a St. Bernard Trucking invoices totaling $381,550.00.  Wise Environmental has not been paid for its services.[23]

Sewell alleges that, despite multiple representations by SBPG that St. Bernard Trucking would be paid for its services pursuant to their contract, SBPG has refused to pay St. Bernard Trucking for the work performed.[24]  Sewell asserts that on November 5, 2021, through counsel, he sent a letter to SBPG demanding payment under the contract and that SBPG has, to date, refused to pay St. Bernard Trucking for the services performed.[25]  SBPG advises that, while processing St. Bernard Trucking's invoices, discrepancies were noticed that led to the discovery that St. Bernard Trucking did not hold a commercial contractor's license.[26]  After SBPG made this finding, it determined that the contract was an absolute nullity for failure to comply with La. R.S. 37:2150, and it refused to pay to St. Bernard Trucking's

---

[21] *Id*. at pp. 8-9.
[22] *Id*. at p. 9.
[23] *Id*.
[24] R. Doc. 6 at ¶ 8.
[25] *Id*. at ¶ 9.  The Court notes that the November 5, 2021 demand letter states that the total balance due is $1,665,661.48.  *See*, R. Doc. 6-3 at pp. 1-3.
[26] R. Doc. 53 at p. 2.

invoices.[27]  As a result, Sewell filed this suit against SBPG asserting that SBPG breached its contract with St. Bernard Trucking in bad faith.[28]  Sewell alleges that he has suffered damages as a result of SBPG's breach of contract, and he seeks to recover the costs of labor and materials, lost profits and overhead, the cost of travel and job site visits, other damages resulting from SBPG's action, and attorney's fees.[29] Sewell asserts that a principal balance of $1,802,669.15, plus legal interest from the date due, is due and owing by SBPG or, alternatively, the sum of $1,665,661.48, plus legal interest from the date due, is due and owing by SBPG.[30]  Alternatively, if the Court finds that no valid contract exists between Sewell and SBPG, Sewell argues that he is entitled to recover the value by which SBPG has been unjustly enriched under the doctrine of unjust enrichment.[31]  Sewell further asserts, in the alternative, that he is entitled to recover the amount owed by SBPG under the contract based upon the doctrine of detrimental reliance.[32]

In its Answer to the First Amended Complaint, SBPG asserts several affirmative defenses, including that the contract is an absolute nullity under Louisiana law, specifically La. R.S. 37:2150, *et seq*., and La. R.S. 37:2160, because a commercial contractor's license is required for commercial work exceeding $50,000 and neither Sewell nor St. Bernard Trucking held a commercial contractor's license at the time of performance.[33]  SBPG also asserts, as an affirmative defense, that

---

[27] *Id.*
[28] R. Doc. 1 at ¶¶ 10-11; R. Doc. 6 at ¶¶ 10-11.
[29] R. Doc. 6 at ¶ 12.
[30] *Id*. at ¶ 14.
[31] *Id*. at ¶ 17.
[32] *Id*. at ¶ 18.
[33] R. Doc. 11 at ¶¶ 20-24.

Sewell's alleged damages are due to his own contributory and/or comparative fault and/or the fault of a third party.[34]  Finally, SBPG asserts, as an affirmative defense, that any claims asserted by Sewell are subject to a general offset against any amounts already paid to Sewell, its contractors, and/or its vendors.[35]

Thereafter, on June 14, 2022, the Court allowed Wise Environmental to file a Complaint in Intervention against SBPG,[36] in which Wise Environmental seeks the principal balance of $381,550.00, plus legal interest from the date due from SBPG.[37] Like Sewell, Wise Environmental asserts that SBPG has been unjustly enriched as a result of its unjustified failure to pay Wise Environment the amounts owed for the services provided, and further asserts that it is entitled to recover the amount by which SBPG has been enriched under the doctrine of unjust enrichment.[38]

Sewell filed the instant Motion for Summary Judgment on November 2, 2022, asserting that he is entitled to "no less than $1,665,661.48, plus pre-judgment and post-judgment interest on all amounts due, attorney fees, and all other general and equitable relief to which Plaintiff may be entitled" for the services performed at SBPG's request.[39]  In doing so, Sewell "adopts and incorporates" the arguments made by Wise Environmental in support of its motion for partial summary judgment, which remains pending before the Court.[40]  In his Motion for Summary Judgment, Sewell

---

[34] *Id*. at ¶ 25.
[35] *Id*. at ¶ 26.
[36] R. Docs. 23 & 26.
[37] R. Doc. 27.
[38] *Id*. at ¶ 16.
[39] R. Doc. 49 at p. 1.
[40] *Id*. at p. 1 (*citing* R. Docs. 36, 36-1, & 44-3).  Wise Environmental asserts that Louisiana's Public Bid Law does not apply to service contracts, like the contract between SBPG and St. Bernard Trucking, so St. Bernard Trucking and Wise Environmental were not required to hold commercial contractor's

asserts that he is the owner of St. Bernard Trucking, a sole proprietorship that entered into an agreement with SBPG to provide emergency sewerage hauling and disposal services made necessary by Hurricane Ida, which made landfall on August 29, 2021.[41]  Sewell claims that at no time prior to completing the emergency services requested was he requested to certify that he held an active commercial contractor's license under Louisiana law, and Sewell further asserts that SBPG did not raise the issue until after all of the services were performed.[42]  Sewell claims that neither the 2021 contract with SBPG nor the prior contracts between SBPG and St. Bernard Trucking required that St. Bernard Trucking be a licensed contractor.[43]

Sewell argues that he did not act as a contractor and was not required to have a commercial contractor's license under La. R.S. 37:2150, *et seq.*, since he was engaged in an emergency capacity to move water and sewerage to mitigate flooding.  Relying upon the definition of "contractor" in  La. R.S. 37:2150.1, Sewell asserts that he did not construct, alter, repair, improve, move, demolish, put up, tear down, furnish labor, or install materials or equipment for any sewer or other construction.[44]  Sewell contends that the definition of "contractor" "is intended to relate to *construction* projects and work ancillary to construction," and further asserts that there is no evidence to suggest that he constructed, altered, repaired, improved, moved,

licenses. R. Doc. 36.  However, even if the Public Bid Law applies to the contract, Wise Environmental asserts that Louisiana Governor John Bel Edwards suspended its application before Hurricane Ida made landfall.  *Id.* at p. 1.  Finally, Wise Environmental asserts that neither St. Bernard Trucking nor Wise Environmental was acting as a contractor when they provided drainage and sewage services to SBPG, so La. R.S. 37:2150, *et seq.*, does not apply.  *Id.*

[41] R. Doc. 49-1 at p. 1 (*citing* R. Doc. 49-2 at ¶ 1; R. Doc. 49-3 at ¶¶ 3, 5).

[42] R. Doc. 49-1 at p. 2 (*citing* R. Doc. 49-2 at ¶ 5; R. Doc. 49-3 at ¶ 4).

[43] R. Doc. 49-1 at p. 2 (*citing* R. Doc. 49-2 at ¶ 4; R. Doc. 49-3 at ¶¶ 4, 13; R. Doc. 49-4; R. Doc. 36-3).

[44] R. Doc. 49-1 at p. 3 (*citing* R. Doc. 49-2 at ¶ 28; R. Doc. 49-3 at ¶¶ 12, 14); R. Doc. 49-1 at p. 4.

demolished, put up or tore down any construction undertaking, as contemplated by La. R.S. 37:2150.1(4)(a).[45]  As such, Sewell argues that the contract with SBPG is not a nullity and must be enforced in his favor.[46]

Sewell acknowledges that the definition of "contractor" references "sewer" and that he was removing water and sewerage from one location and transporting it to another location for flood mitigation.  Sewell, however, claims that he did not move a sewer or otherwise perform any of the enumerated acts on the sewer that would be required to meet the definition of a contractor pursuant to La. R.S. 37:2150.1(4)(a).[47] Anticipating that SBPG may rely on the opinion of an employee of the LSLBC to argue that the services provided by Sewell require a commercial contractor's license, Sewell asserts that neither the employee nor the LSLBC are permitted to alter or modify the applicable law.[48]  Sewell contends that there is no law that requires a commercial contractor's license for services that are not within the definition of La. R.S. 37:2153(A).[49]  Sewell also asserts that the employee's opinion is irrelevant and inadmissible for the reasons asserted by Wise Environmental in its reply brief in support of its own motion for partial summary judgment.[50]  Sewell further asserts that La. R.S. 37:2163 requires an awarding authority to place in their bid specifications the requirement that a contractor shall certify that he holds an active

---

[45] R. Doc. 49-1 at p. 5 (emphasis in original).
[46] R. Doc. 49-1 at pp. 4-5.
[47] R. Doc. 49-1 at p. 5.
[48] R. Doc. 49-1 at p. 6.
[49] R. Doc. 49-1 at p. 6.
[50] R. Doc. 49-1 at p. 7 (*citing* R. Doc. 44-3 at pp. 1-4).

license, and that the absence of any license certification by SBPG "evidences the fact that no commercial contractor's license requirement ever existed."[51]

SBPG argues that its contract with Sewell is an absolute nullity because La. R.S. 37:2150, *et seq.*, requires a commercial contractor's license to engage in the work set forth in the contract between SBPG and St. Bernard Trucking and none of the parties at issue (St. Bernard Trucking, Wise Environmental, and Ronda McDaniel) had the requisite license.[52]  SBPG clarifies that it is not relying on Louisiana's Public Bid Law to invalidate the contract, since it does not apply to contracts for professional services, such as the contract before the Court, admitting that its reference to the public bid law in its answer was "an embarrassing cut and paste error."[53]  Instead, SBPG argues that La. R.S. 37:2160 renders any work performed in violation of the licensing requirements unlawful.[54]  SBPG cites a Louisiana appellate court decision for the proposition that a contractor cannot recover damages for breaching an illegal contract, nor can he recover under the theory of unjust enrichment.[55]

SBPG also relies upon the Declaration of Brent Templet, an employee of the LSLBC, who attests that, in his opinion, the work contemplated by the contract and

---

[51] R. Doc. 49-1 at p. 7 (*quoting* La. R.S. 37:2161(A)(1)) (internal quotation marks omitted).

[52] R. Doc. 53 at p. 8; *See, Id.* at p. 4 (*citing* R. Docs. 53-10, 53-11, 53-14).  While a "Ronda McDaniel" is included on SBPG's Witness List (R. Doc. 38 at p. 2), a "Ronda McMichael" is listed on Wise Environmental's Witness List (R. Doc. 40 at p. 1) and referenced by the parties in the joint Pre-Trial Order.  R. Doc. 80 at pp. 26, 28

[53] R. Doc. 53 at p. 5.  The Court notes, however, that SBPG further asserts that even if the Court found the public bid law applicable to the dispute in this case, the contract would be an absolute nullity for Sewell's failure to comply with the public bid law procedure requiring a properly licensed contractor. *See*, R. Doc. 53 at pp. 6-7.

[54] R. Doc. 53 at p. 8.

[55] R. Doc. 53 at pp. 8-9 (quoting *Quaternary Resource Investigations, LLC v. Phillips*, 2018-1453 (La. App. 1 Cir. 11/19/20), 316 So.3d 448, 462) (internal quotation marks omitted).

the work performed by St. Bernard Trucking required a commercial contractor's license under Louisiana law.[56] SBPG claims that Templet's opinions are based upon La. R.S. 37:2150.1, which defines "contractor" very broadly, and two bulletins issued by the LSLBC, 7-55 and 7-89, which concern "Sewer Plants or Sewer Disposal" and/or "Industrial Cleaning and Material Waste Handling."[57] SBPG argues that the statute defines "contractor" very broadly and includes "furnishing labor," and that the work performed under the contract constituted labor furnished.[58] SBPG contends that Bulletins 7-55 and 7-89 further define "construction undertaking," as that phrase is used in the definition of "contractor," and that it is clear that the work performed by Sewell constitutes maintenance of a sewer plant and sewer disposal system as described in Bulletin 7-55.[59] SBPG points out that Sewell failed to submit any countervailing affidavits or expert testimony stating that Templet's conclusion is wrong or that his analysis or methodology was flawed.[60] SBPG repeatedly states that it "takes no pleasure in having to deny payment to St. Bernard Trucking or its subcontractors, vendors, and suppliers," but claims that St. Bernard Trucking should have known that a license was required to perform this work.[61] SBPG also asserts "[a]s a brief aside," that it recently discovered that Sewell did not acquire ownership of St. Bernard Trucking until September 22, 2022, and further asserts that, "This fact

---

[56] R. Doc. 53 at p. 9 (*citing* R. Doc. 53-14). The Court notes that SBPG refers to a "Brent Templat with the Louisiana Licensing Board for Contractors" (R. Doc. 53 at pp. 9-11), but SBPG submitted a Declaration from "Brent Templet" (R. Doc. 53-14). Because the Declaration is signed by Brent Templet, the Court will refer to the person as "Templet."

[57] R. Doc. 53 at pp. 9-10 (*citing* R. Docs. 53-18 & 53-19).

[58] R. Doc. 53 at pp. 10-11.

[59] *Id*. at p. 11.

[60] *Id*.

[61] *Id*. at pp. 3 & 12.

alone warrants denial of the instant motion as Sewell was not owner for the period of August 31, 2022 to September 21, 2022 and Sewell was not the owner of St. Bernard Trucking when the contract was signed."[62]

In response, Sewell maintains that he did not act as a contractor for purposes of La. R.S. 37:2150.1(4)(a) and, as such, he was not required to have a commercial contractor's license.[63]  Sewell asserts that merely furnishing labor does not satisfy the definition of "contractor" unless done for a construction undertaking, and Sewell maintains that he did not furnish labor for a construction undertaking.[64]  Sewell also reiterates that if he had been required to hold a commercial contractor's license under La. R.S. 37:2150.1(4)(a), SBPG would have been required by La. R.S. 37:2163(A)(1) to include in its bid specifications that a contractor certify that he holds an active license, which SBPG did not do.[65]  Sewell claims that, although SBPG is attempting to manufacture an excuse for this glaring omission, La. R.S. 37:2163(A)(1) applies to "contracts either by bid *or through negotiations*."[66]  Sewell also maintains that the LSLBC is authorized only to enforce and carry out the statutory provisions enacted by the legislature, and cannot promulgate any rule of law, especially in contravention of the language of La. R.S. 37:2150.1(4)(a).[67]  Applying Louisiana laws of statutory construction, Sewell argues that the statute is clear and unambiguous and should be

---

[62] R. Doc. 53 at p. 2 (*citing* R. Doc. 53-20).
[63] R. Doc. 56.
[64] *Id.* at p. 1.
[65] *Id.* at pp. 1-2 & 6-7.
[66] R. Doc. 56 at p. 2 (*quoting* La. R.S. 37:2163(A)(1)) (emphasis in original) (internal quotation marks omitted).
[67] R. Doc. 56 at p. 3.

applied as written.[68]  Sewell further asserts that the bulletins relied upon by SBPG are not competent summary judgment evidence and are not law.[69]  Sewell likewise asserts that the conclusory opinion of Templet should be rejected by the Court because it lacks any legal authority and because the Declaration does not contain information sufficient to qualify him as an expert.[70]  Finally, Sewell claims that the uncontroverted evidence shows that he was an owner of St. Bernard Trucking at all relevant times, that SBPG failed to cite any legal authority in support of its position regarding the ownership of St. Bernard Trucking, and points out that SBPG did not raise the issue of ownership as a contested issue of fact in this case.[71]

In a Supplemental Memorandum, filed after the Court held a Pretrial Conference on January 11, 2023, SBPG asserts that the question before the Court is not whether this was a construction project, but whether this was a "construction undertaking," as that term is used in La. R.S. 37:2150.1(4)(a).[72]  Relying upon La. R.S. 37:2153, which sets forth the powers of the LSLBC, SBPG initially contends that the Court must look beyond the statutes to the rules and regulations promulgated by the LSLBC in considering what constitutes a "construction undertaking."[73]  SBPG claims that the Louisiana legislature vested the LSLBC with the duty and power to more fully define "construction undertakings," and that Bulletins 7-55 and 7-89 provide further guidance about what work constitutes a "construction undertaking.[74]

---

[68] R. Doc. 56 at pp. 3-4 (citing authority).
[69] *Id.* at p. 4.
[70] *Id.* at p. 5 (*citing* R. Doc. 41-14 at ¶ 8).
[71] R. Doc. 56 at pp. 7-8.
[72] R. Doc. 89 at p. 3.
[73] *Id.* at p. 2.
[74] *Id.* at pp. 2-3.

SBPG then asserts that whether this was a construction undertaking is a question of fact for the jury to decide.[75]  SBPG claims that if the Court agrees with Sewell and looks only to the definition of "contractor" in La. R.S. 37:2150.1 to determine whether a license was required, "that would upend the entire licensing process of the LSLBS" because "That is not how the legislature envisioned that the LSLBC was supposed to work and that is not how the LSLBC works."[76]

SBPG next asserts that the parties cannot contract around the legal requirement of a license, and that SBPG did not have a duty to put Sewell on notice that a license was required for the work performed.[77]  SBPG then cites a decision from another Section of this Court, *Progressive Waste Solutions of LA, Inc. v. St. Bernard Parish Government*, for the proposition that, because Louisiana law restricts parties from entering into a contract that requires a commercial contracting license when the contractor does not have a license, SBPG and Sewell both lacked the requisite legal capacity to enter into a contract when Sewell did not have the requisite license.[78]  SBPG further argues that Sewell's ownership of St. Bernard Trucking "is a disputed and relevant issue" regarding Sewell's capacity to execute a contract for St. Bernard Trucking on May 17, 2021, while it was still owned by Don Meyers.[79]  SBPG contends that the "transfer document" whereby Don Meyers transferred certain duties to Barry Sewell is dated May 5, 2021, but it was not notarized until

---

[75] *Id.* at p. 3.
[76] *Id.*
[77] *Id.* at pp. 4-5.
[78] *Id.* at pp. 5-6.  SBPG does not provide a case citation for the opinion cited in its brief.  The Court believes, however, that SBPG is referring to *Progressive Waste Solutions of LA, Inc. v. St. Bernard Parish Government*, Civ. A. No. 16-8669, 2016 WL 4191847 (E.D. La. Aug. 9, 2016) (Fallon, J.).
[79] R. Doc. 89 at p. 7.

September 22, 2021.[80]  SBPG suggests that, "a jury could easily conclude that Barry Sewell was not the owner of St. Bernard Trucking and therefore did not have the capacity to sign the contract on May 17, 2021."[81]

Sewell also filed a Supplemental Memorandum, in which he argues that, in light of the uncontested facts concerning the nature and quality of the services provided by Sewell in the Pre-Trial Order, the only question before the Court is the legal interpretation of La. R.S. 37:2150.1(4)(a) based upon those uncontested facts.[82] Relying upon the deposition of the President of St. Bernard Parish, a former Chief Administrative Officer of St. Bernard Parish, and the Director for the Office of Homeland Security and Emergency Preparedness of St. Bernard Parish, Sewell contends that the work performed for SBPG is not a construction undertaking and, therefore, did not require a commercial contractor's license.[83]  Sewell further asserts that La. R.S. 37:2150.1(4)(a) must be strictly construed because SBPG seeks to have it interpreted in a way that impairs Sewell's rights in contract.[84]  Sewell maintains that the LSLBC bulletins cited by SBPG are not laws and, therefore, have no bearing on the legal question of whether Sewell is a "contractor" under La. R.S. 37:2150.1(4)(a).[85]  Nonetheless, Sewell points out that Section 103 of the LSLBC's

---

[80] *Id.* at pp. 7-8.
[81] *Id.* at p. 8.
[82] R. Doc. 90 at p. 1.
[83] *Id.* at pp. 2-3 (*citing* R. Docs. 90-1, 90-2, & 90-3).
[84] R. Doc. 90 at pp. 3-4 (citing *Glorioso v. City of Kenner*, 19-298 (La. App. 5 Cir. 12/18/19), 285 So.3d 601, 604).
[85] R. Doc. 90 at pp. 5-6.

rules and regulations expressly defers to La. R.S. 37:2150.1 for the definition of words and phrases used therein.[86]

Sewell further asserts that the clean hands doctrine prohibits SBPG from avoiding its obligation to pay Sewell.[87]  Sewell contends that, "A party who knew or should have known at the time of contracting of a defect that made the contract absolutely null may not avail himself of the nullity when the purpose of the illegal contract has been accomplished."[88]

## II.    LEGAL STANDARD

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[89]  When assessing whether a dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[90]  While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only

---

[86] *Id*. at p. 6 (*citing* R. Doc. 53-22 at p. 30) ("As used in these rules and regulations, words and phrases shall be defined as provided in R.S. 37.2150.1, in R.S. 37:2150-2192, and as otherwise defined in these Rules and Regulations.").

[87] R. Doc. 90 at pp. 6-7.

[88] *Id*. at pp. 6-7 (*quoting* La. Civ. Code art. 2033, comment (c)) (internal quotation marks omitted).

[89] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).

[90] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citations omitted).

a scintilla of evidence."[91]  Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[92]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[93]  The nonmoving party can then defeat summary judgment by either submitting evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[94]  If, however, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[95]  The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[96]

---

[91] *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).
[92] *Delta & Pine Land Co.*, 530 F.3d at 399 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[93] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991).
[94] *Id.* at 1265.
[95] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
[96] *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553 (*quoting* Fed. R. Civ. P. 56(e)).

## III.   ANALYSIS

### A. The Contract is Not an Absolute Nullity

#### 1.   *Sewell d/b/a St. Bernard Trucking is not a "contractor" under La. R.S. 37:2150.1(4)(1).*

The Court finds that there is no genuine dispute of any material fact in this case.  Neither party disputes that SBPG entered into a contract with St. Bernard Trucking on May 20, 2021 for emergency drainage and sewage removal, which was effective June 1, 2021, and the parties agree that, "The authenticity, execution and content of said contract are not at issue."[97]  There is also no dispute that on August 30, 2021, the day after Hurricane Ida made landfall in Louisiana, SBPG directed St. Bernard Trucking to mobilize equipment and vehicles immediately to "pump, haul, and dump water and sewage into designated areas."[98]  There is also no dispute that St. Bernard Trucking, with the help of subcontractors like Wise Environmental, provided the emergency sewage removal services to SBPG from August 31, 2021 through September 24, 2021, that St. Bernard Trucking submitted invoices to SBPG totaling $1,802.669.16 for these services, and that, at SBPG's request, St. Bernard Trucking submitted revised invoices totaling $1,665,661.48 for the work performed.[99] It is further undisputed that neither Sewell, St. Bernard Trucking, nor Wise Environmental possessed a commercial contractor's license from LSLBC for the period of time that this work was performed under the contract.[100]

---

[97] R. Doc. 80 at p. 7.
[98] *Id*.
[99] *Id*. at pp. 8-9.
[100] *Id*. at pp. 9-10.

The issue before the Court is a narrow one – whether the contract between St. Bernard Trucking and SBPG is an absolute nullity because Sewell d/b/a St. Bernard Trucking was required by La. R.S. 37:2150, *et seq.*, to have a commercial contractor's license to perform emergency drainage and sewage removal in St. Bernard Parish in the wake of Hurricane Ida. Although the parties disagree on whether this is a question of law or fact,[101] the Court agrees with Sewell that this is a question of law because it involves the statutory interpretation of the word "contractor" in La. R.S. 37:2150.1(4)(a). Indeed, the parties agree as to the "facts" of the work performed by St. Bernard Trucking.[102] At the time St. Bernard Trucking and SBPG entered into the contract, Section 2150.1(4)(a) defined a "contractor" as:

> any person who undertakes to, attempts to, or submits a price or bid or offers to construct, supervise, superintend, oversee, direct, or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, or furnishing labor, or furnishing labor together with material or equipment, or installing the same for any building, . . . sewer, . . . or any other construction undertaking for which the entire cost of same is fifty thousand dollars or more when such property is to be used for commercial purposes . . . .[103]

A "contractor" is further defined by the statute as encompassing both subcontractors and general contractors.[104]

Under La. R.S. 37:2160, it is "unlawful for any person to engage or to continue in this state in the business of contracting, or to act as a contractor as defined in this

---

[101] *See*, R. Docs. 89 & 90.
[102] R. Doc. 80 at ¶ 7.
[103] La. R.S. 37:2150.1(4)(a). The Court notes that the Louisiana legislature approved certain revisions to Section 2150.1(4)(a) on May 26, 2022, but the substance of the statute pertinent to this litigation remains the same.
[104] La. R.S. 37:2150.1(4)(b).

Chapter, unless he holds an active license as a contractor under the provisions of this Chapter."[105]  As such, "only a person who *has obtained* a contractor's license from the State Licensing Board for Contractors may be engaged in the contracting vocation in the State of Louisiana."[106]  According to La. R.S. 37:2150, the purpose of this licensing requirement is to protect "the health, safety, and general welfare of all those persons dealing with persons engaged in the contracting vocation," and to afford such persons "an effective and practical protection against the incompetent, inexperienced, unlawful, and fraudulent acts of contractors with whom they contract."[107]  Section 2150 further provides that, "the legislative intent is that the State Licensing Board for Contractors shall monitor *construction* projects to ensure compliance with the licensure requirements of this Chapter."[108]

As explained by another Section of this Court, La. R.S. 37:2150, *et seq*., "seeks to protect those persons dealing with contractors by providing licensure requirements for contractors performing work within the State."[109]  The court further explained, "These provisions were specifically enacted so that unqualified individuals operating in professional fields could not injure or mislead the State's citizens."[110]  When a

---

[105] La. R.S. 37:2160(A)(1).

[106] *Biomedical Applications of LA, Inc.*, Civ. A. No. 06-1093, 2007 WL 861156 at *2 (quoting *Hagberg v. John Bailey Contractor*, 435 So.2d 580, 584 (La. App. 3 Cir. 6/29/83)) (internal quotation marks omitted) (emphasis in original).

[107] La. R.S. 37:2150.

[108] *Id*. (emphasis added).

[109] *Tradewinds Environmental Restoration, Inc. v. St. Tammany Park, LLC*, Civ. A. No. 06-596, 2017 WL 1191896, at *2 (E.D. La. Apr. 20, 2007) (Barbier, J.) (quoting *Tradewinds Environmental Restoration, Inc. v. Biomedical Applications of LA, Inc.*, Civ. A. No. 06-1093, 2007 WL 861156, at *2 (E.D. La. Mar. 20, 2007) (Fallon, J.)) (internal quotation marks omitted) (citing authority).

[110] *St. Tammany Park, LLC*, Civ. A. No. 06-596, 2017 WL 1191896 at *3; *Biomedical Applications of LA, Inc.*, Civ. A. No. 06-1093, 2007 WL 861156 at *3.

contract violates a rule of public order, the contract is "absolutely null."[111]  Louisiana law further provides that, "any act in derogation of a law enacted for the protection of the public interest is an absolute nullity."[112]  As such, "any contracts made in violation of the State licensing requirements are null and void."[113]  Additionally, "Because of the strong public policy reasons underlying the statutes, the licensing rules established by §§ 37:2150, et seq, . . . may not be set aside by individuals through private agreement."[114]  "It is well established in Louisiana law that a construction agreement made with an unlicensed contractor is null and void."[115]

Here, the contract between the parties obligated St. Bernard Trucking to provide "drainage and sewage removal in support of emergency services" for St. Bernard Parish.[116]  Specifically, SBPG agreed with St. Bernard Trucking's management and response plan, as well as its pricing, for drainage and sewage removal for St. Bernard Parish, effective June 1, 2021 through May 31, 2022.[117]  The contract provides that St. Bernard Trucking's plan for the safe and timely removal of

---

[111] La. Civ. Code art. 2030.

[112] La. Civ. Code art. 7.

[113] *St. Tammany Park, LLC*, Civ. A. No. 06-596, 2017 WL 1191896 at *3 (quoting *Biomedical Applications of LA, Inc.*, Civ. A. No. 06-1093, 2007 WL 861156 at *3 (citing *Alonzo v. Chifici*, 526 So.2d 237, 240-43 (La. App. 5 Cir. 1988); *Hagberg*, 435 So.2d at 584-85; *Executone of Cent. La., Inc. v. Hosp. Svc. Dist. No. 1 of Tangipahoa Parish*, 798 So.2d 987, 993 (La. App. 1 Cir. 5/11/01); *Touro Infirmary, Preferred Continuum Care-New Orleans, LP v. Travelers Prop. Cas. Co. of America*, Civ. A. No. 06-3535, 2007 WL 496858, at *3-5 (E.D. La. Feb. 13, 2007) (Vance, J.))); *Maroulis v. Entergy Louisiana, LLC*, 20-226 (La. App. 5 Cir. 2/10/21), 314 So.3d 1002, 1005, *rev'd on other grounds by Maroulis v. Entergy Louisiana, LLC*, 2021-00384 (La. 6/8/21), 317 So.3d 316 (per curiam) (citing *Alonzo*, 526 So.2d at 243; La. Civ. Code art. 7).

[114] *St. Tammany Park, LLC*, Civ. A. No. 06-596, 2017 WL 1191896 at *3 (quoting *Biomedical Applications of LA, Inc.*, Civ. A. No. 06-1093, 2007 WL 861156 at *4 (citing *Hagberg*, 435 So.2d at 584)). *See*, *Maroulis*, 20-226, 314 So.3d 1002 at 1005 ("Individuals may not by private agreement set aside the contractor's licensing rules established by the legislature.") (citing authority).

[115] *Maroulis*, 20-226, 314 So.3d at 1005-06 (citing authority).

[116] *See*, R. Doc. 49-4 at pp. 1 & 2; R. Doc. 53-7 at pp. 1 & 6; R. Doc. 80 at ¶ 7.

[117] R. Doc. 49-4 at p. 5; R. Doc. 53-7 at p. 2.

sewerage from emergency incident "is for the health and safety of St. Bernard residents."[118]   Under the terms of the contract, upon deployment by SBPG, St. Bernard Trucking agreed to "assemble a fleet of trucks, supplies and manpower to deal with additional emergency services as needed depending on incident level."[119] The contract provides that, "This Mobilization includes but not [sic] limited to: truck rental, short term insurance, hoses, fitting gaskets, oil, grease, hydraulic fluid, buckets, cones, bleach, fuel, fuel tank, generators, electricians, mechanics, drivers, portable showers, portable toilets, portable washing stations, tire services, bands, gloves, first-aid supplies, toiletries, ice, water, electric cords, straps, gas cans, etc…"[120]

The contract further specifies that, "If an incident renders the sewer treatment infrastructure inoperable, the safe and timely removal of raw sewerage will be performed with vacuum trucks operating on a 24/7 basis, where the sewerage would be manually removed from below the ground, loaded and transported to functioning facilities."[121]   According to the contract, the vacuum trucks "contain a vacuum pump, which removes the air from the tank, causing a vacuum at the hose, drawing the sewerage into the tank from manholes or inoperable lift stations throughout the parish," and, "These trucks would remove enough sewerage to maintain the system and not overflow."[122]   The contract provides that, "Dump sites would be set up to

---

[118] R. Doc. 49-4 at p. 5; R. Doc. 53-7  at p. 2.
[119] R. Doc. 49-4 at p. 5; R. Doc. 53-7 at p. 2; R. Doc. 80 at ¶ 7.
[120] R. Doc. 49-4 at p. 5; R. Doc. 53-7 at p. 2.
[121] R. Doc. 49-4 at p. 5; R. Doc. 53-7 at p. 2.
[122] R. Doc. 49-4 at p. 3; R. Doc. 53-7 at p. 3.

unload waste water," and that, "St. Bernard Trucking shall provide labor, material and equipment for any and/or all drainage and sewerage removal services in support of emergency operations."[123]   The contract further provides that, "The services shall be provided at the location(s) identified by the St. Bernard Parish Emergency Operations Center under the direction of the Public Works," and that, "It is understood by St. Bernard Trucking that the operation will begin and cease from the authorization of the St. Bernard Parish President and Emergency Operation Center."[124]   The parties do not dispute the terms of the contract.[125]

Based on the language in the contract, the Court agrees with Sewell that St. Bernard Trucking was engaged in an emergency capacity to remove water and sewerage from one location in St. Bernard Parish and to transport it to another location to prevent flooding after Hurricane Ida.[126]   According to the pricing schedule in the contract, St. Bernard Trucking billed SBPG for the cost of mobilizing and de-mobilizing each truck, the hourly cost per truck for pumping, the cost of setting up a pump for discharging sewer, an hourly cost for discharging the pump, an hourly cost per light tower at the pump site, and a daily cost for orange safety cones.[127]   The parties agree that when Hurricane Ida made landfall on August 30, 2021, SBPG notified and directed St. Bernard Trucking to "mobilize equipment and vehicles immediately to pump, haul and dump into designated areas water and sewage."[128]

---

[123] R. Doc. 49-4 at p. 3; R. Doc. 53-7 at p. 3
[124] R. Doc. 49-4 at p. 3; R. Doc. 53-7 at p. 3.
[125] *See, generally*, R. Docs. 49-1, 53, 56, & 80.
[126] *See*, R. Doc. 49-1 at p. 5; R. Doc. 49-4 at p. 3; R. Doc. 57-3 at p. 3.
[127] R. Doc. 49-4 at p. 6; R. Doc. 57-3 at p. 4.
[128] R. Doc. 80 at p. 7.

The parties also agree that, "Upon request, St. Bernard Trucking began mobilizing a fleet of trucks to manually remove sewage from below the ground to be loaded and transported to functioning facilities in accordance with the Contract . . . ."[129] Further, the parties agree that, "St. Bernard Trucking did perform all services requested under the contract, and there is no dispute regarding the quality of the service provided by St. Bernard Trucking or its subcontracts."[130] The Court finds that there is no genuine dispute as to any material fact regarding whether these actions constitute a construction project or a construction undertaking, as those terms are used in La. R.S. 37:2150.1(4)(a), which defines the word "contractor."

SBPG has not cited any legal authority or offered any competent summary judgment evidence to show that the contract contemplated or required St. Bernard Trucking to perform any sort of construction or "construction undertaking." The contract does not contemplate or require St. Bernard Trucking "to construct, supervise, superintend, oversee, direct, or assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, or furnishing labor, or furnishing labor together with material or equipment" for "any building, highway, road, railroad, sewer, grading, excavation, pipeline, public utility structure, project development, housing, or housing development, improvement, *or any other construction undertaking*" that exceeded $50,000.[131] The Court agrees with Sewell that, although the definition of "contractor" includes the word "sewer," it refers

---

[129] *Id.* at p. 8.

[130] *Id.*

[131] *See*, La. R.S. 37:2150.1(4)(a) (emphasis added).

only to "offers to construct, supervise, superintend, oversee, direct, or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, or furnishing labor, or furnishing labor together with material or equipment, or installing the same for any . . . sewer."[132]  SBPG has not provided, nor is there any evidence before the Court to suggest, that St. Bernard Trucking agreed to, or performed any work to, construct, alter, repair, improve, move, demolish, put up, tear down, or install a sewer in St. Bernard Parish.  St. Bernard Trucking agreed only to remove water and sewerage from one location in St. Bernard Parish and to transport it to another location to avoid flooding after Hurricane Ida, and there is no dispute that St. Bernard Trucking performed those services.[133] Further, SBPG cites no legal authority to support its position that "drainage and sewage removal" constitutes a construction project or some "other construction undertaking" under La. R.S. 37:2150.1(4)(a).  Instead, SBPG relies solely on the Declaration of Brent Templet, an employee of the LSLBC "whose duties include reviewing scopes of work and making determinations if a contractor's license is required and if so what type of license."[134]  Templet asserts that, "Although the LSLBC makes the final decision on licensing, it is my opinion in my position with the LSLBC that the work contemplated under the contract and the work performed as evidenced by the invoices required a commercial contractor's license under Louisiana law . . . ."[135]  According to Templet, a contractor's license was required because,

---

[132] *Id.*
[133] R. Doc. 80 at p. 8.
[134] R. Doc. 53 at pp. 9-13; *See,* R. Doc. 53-14 at ¶¶ 2 & 3.
[135] R. Doc. 53-14 at ¶ 8.

"Sewage Disposal for a municipality falls under the Major Classification of Municipal and Public Works.  Sewage disposal would also fall under the sub classification of Sewer Plants or Sewer Disposal, as well as the specialty classification Industrial Cleaning and Material Waste Handling."[136]  Although Templet does not cite any authority, legal or otherwise, to support this assertion, SBPG argues that Templet is referring to two bulletins issued by the LSLBC, Bulletin 7-55 and Bulletin 7-89, which SBPG contends "constitute law as administrative regulations."[137]  Like Templet, SBPG cites no legal authority for this assertion.

Without addressing the parties' arguments regarding whether Templet's testimony is relevant or admissible,[138] SBPG has failed to direct the Court's attention to any legal authority suggesting that a bulletin issued by the LSLBC constitutes law or legal authority, and the Court has found none.  The Court notes that during the Final Pretrial Conference held on January 11, 2023, counsel for SBPG struggled to explain what the bulletins are and what legal effect, if any, they have on this litigation.  SBPG submitted a one-page exhibit in support of its Opposition brief purporting to be Bulletin 7-55, which states that it is a "Candidate Information Bulletin" regarding "the construction, maintenance or repair of sewer plants and related sanitary and storm water sewage oxidation ponds and disposal and treatment facilities."[139]  SBPG also submitted a two-page exhibit purporting to be Bulletin 7-89,

---

[136] *Id.*
[137] R. Doc. 53 at p. 10.
[138] *See*, R. Doc. 49-1 at pp. 6-7; R. Doc. 53 at pp. 10-11.
[139] R. Doc. 53-19.  The Court notes that SBPG filed this document into the record and labeled it, "Exhibit Bulletin 7-89."  *Id.*

which does not contain the word "bulletin" or any reference to "7-89," and provides that, "Industrial Cleaning and Material/Waste Handling is a closed book examination with 50 multiple-choice questions."[140]   SBPG makes no effort to connect these bulletins to the definition of "contractor" in La. R.S. 37:2150.1(4)(a) in its Opposition brief.

In its Supplemental Memorandum, SBPG asserts that the Louisiana legislature vested the LSLBC with the duty and power to more fully define the term "construction undertaking," as that term is used in Section 2150.1(4)(a), based upon La. R.S. 37:2156.1(L) and "LAC 46:301(A)."[141]   The Court rejects this argument as baseless.   Neither provision concerns the definition of "contractor" in La. R.S. 37:2150.1(4)(a), or the meaning of "construction undertaking," as used therein. Specifically, La. R.S. 37:2156.1 concerns the requirements for issuance of a contractor's license, including that an applicant must "state the classification of work the applicant desires to perform from a list of major classifications as follows . . . ."[142] Section 2156.1(L) merely provides that, "The board may consolidate, add, or remove subclassifications or specialties by rule as it deems appropriate."[143]   Likewise, the provision of the Louisiana Administrative Code cited by SBPG provides that, "Any *contractor* possessing a major classification is permitted to bid or perform any of the specialty type work listed under its respective major classification in R.S. 37:2156.2

---

[140] R. Doc. 53-18.  The Court notes that when SBPG filed this document into the record, it labeled it, "Exhibit Bulletin 7-55."  *Id.*
[141] R. Doc. 89 at pp. 2-3.
[142] La. R.S. 37:2156.1(A).
[143] La. R.S. 37:2156.1(L).

or any other work that might not be listed which is directly related to the major classification it may hold as long as it is not prohibited by any rule, except as provided in R.S. 37:2156.2(A)(IX)(B), (C), and (D)."[144]   SBPG's reliance upon these two provisions presupposes that St. Bernard Trucking is a contractor that would be subject to their requirements.  SBPG, however, has failed to present the Court with any competent summary judgment evidence to show that St. Bernard Trucking is a "contractor" or that the work performed by St. Bernard Trucking constitutes a "construction undertaking," as set forth in La. R.S. 37:2150.1(4)(a).  Further, as Sewell points out,[145] SBPG submitted an exhibit that purports to be a complete copy of Louisiana's "Contractors Licensing Law and Rules and Regulations," dated August 1, 2022, which makes no reference to the word "bulletin" and specifically provides that, "As used in these rules and regulations, words and phrases *shall be defined as provided in R.S. 37:2150.1*, in R.S. 37:2150-2192, and as otherwise defined in these Rules and Regulations."[146]

Based upon the foregoing analysis, the Court concludes that St. Bernard Trucking is not a "contractor" under La. R.S. 37:2150.1(4)(a) because the work performed pursuant to its contract with SBPG did not involve construction or a "construction undertaking."  Accordingly, St. Bernard Trucking was not required to have a commercial contractor's license at the time it performed the work and neither

---

[144] 46 La. Admin. Code Pt XXIX, 301(A) (emphasis added).
[145] R. Doc. 90 at p. 6.
[146] R. Doc. 53-22 at p. 30 (emphasis added).

La. Civ. Code art. 7 nor La. Civ. Code art. 2030 support a finding that the contract is an absolute nullity.  SBPG's arguments to the contrary are meritless.

### B. SBPG Waived Its Defense Regarding Sewell's Alleged Lack of Capacity to Contract on Behalf of St. Bernard Trucking

In an apparent last ditch effort to avoid its contractual obligation to pay St. Bernard Trucking for the work performed, SBPG raises the issue of Sewell's capacity to enter into the contract on behalf of St. Bernard trucking in May 2021.[147]  In its Opposition brief, SBPG asserts, in bolded text that is underlined, that, "As a brief aside, it was recently discovered that Barry Sewell did not acquire ownership of St. Bernard Trucking until September 22, 2022, just two days before all of the work was completed," and that, "This fact alone warrants denial of the instant motion as Sewell was not owner for the period of August 31, 2022 to September 21, 2022 and Sewell was not the owner of St. Bernard Trucking when the contract was signed."[148]  No further argument or analysis is included in the Opposition brief.  As an exhibit to its Opposition brief, SBPG included a copy what purports to be a transfer of ownership of St. Bernard Trucking from Donald Meyers, the owner of St. Bernard Trucking, to Barry Sewell, as Manager of St. Bernard Trucking, which was notarized on September 22, 2021.[149]  In its Supplemental Memorandum, however, SBPG asserts that after struggling "to provide the Court with a coherent answer" regarding the ownership dispute at the Final Pretrial Conference, SBPG is now asserting that Sewell lacked the capacity to execute a contract for St. Bernard Trucking on May 17,

---

[147] R. Doc. 89 at pp. 7-8.
[148] R. Doc. 53 at p. 2.
[149] R. Doc. 53-20.

2021.[150]  According to SBPG, "This is not a standing issue inasmuch as it is a capacity issue and/or a proof of capacity issue."[151]

In his Reply brief, Sewell seems to argue that the Court should reject SBPG's argument regarding legal capacity because SBPG failed to cite any properly authenticated, competent summary judgment evidence to suggest that Sewell did not own St. Bernard Trucking at all relevant times, or to suggest that Sewell does not otherwise have the right to recover in this case.[152]  While not a model of clarity, Sewell asserts that the undisputed evidence shows that he "owned an interest in St. Bernard Trucking prior to performance of any services," and, "More importantly, it is undisputed that Plaintiff is now the sole owner of St. Bernard Trucking and has the right to prosecute this action."[153]  Sewell points out that SBPG did not raise the issue of ownership as a contested issue of fact in its Opposition brief, which Sewell contends explains the lack of authority for its position.[154]  Sewell contends that the undisputed evidence shows that he had ownership at all relevant times and that he was a sole proprietor of St. Bernard Trucking when this lawsuit was filed.[155]   In his Supplemental Memorandum, Sewell argues that SBPG's new defense based upon capacity must fail because there is uncontroverted evidence establishing Sewell's

---

[150] R. Doc. 89 at p. 7.
[151] *Id.*
[152] R. Doc. 56 at pp. 7-8.  The Court notes that Sewell asserts that, "*Plaintiff* did not cite any properly authenticated, competent summary judgment evidence to suggest that Plaintiff did not own St. Bernard Trucking at all relevant times or to even suggest that Plaintiff does not otherwise have the right to recover in the instant matter."  *Id.* (emphasis added).  The reference to "Plaintiff" in this sentence appears to be a typographical error.
[153] R. Doc. 56 at p. 8 (*citing* R. Doc. 49-3 at ¶ 1).
[154] R. Doc. 56 at p. 8.
[155] *Id.*

ownership of St. Bernard Trucking and because SBPG failed to properly plead capacity as an affirmative defense.[156]

Although not mentioned by either party, Fed. R. Civ. P. 9 specifically provides that a party seeking to challenge another party's capacity to sue or be sued "must do so by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge."[157] "If the defendant fails to plead that the plaintiff lacks capacity in a timely manner, the objection is waived and the defense is lost."[158] This Court has previously held that, "If a party desires to raise an issue as to the capacity of any party, the party shall do so by specific negative averment in its answer or pre-answer motion."[159] Here, SBPG did not raise Sewell's purported lack of capacity to contract on behalf of St. Bernard Trucking in its Answer to the First Amended Complaint[160] or in a pretrial motion. Thus, to the extent SBPG, in its Opposition to Plaintiff's Motion for Summary Judgment, is challenging Sewell's capacity to bring this suit on behalf of St. Bernard Trucking, the Court finds that SBPG has waived that objection by not timely asserting it.[161]

---

[156] R. Doc. 90 at pp. 9-10 (*citing* R. Doc. 49-2 at ¶ 1; R. Doc. 49-4 at p. 6; *Sam's Style Shop v. Cosmos Broadcasting Corp.*, 694 F.2d 998, 1004 (5th Cir. 1982)).

[157] Fed. R. Civ. P. 9(a)(2).

[158] *Henderson v. Turner*, Civ. A. No. 11-39, 2012 WL 3109482, at *2 (M.D. La. July 31, 2012) (Berrigan, J.) (citing *Lang v. Tex. & Pac. R.R. Co.*, 624 F.2d 1275, 1277 (5th Cir. 1980)).

[159] *In re Taxable Mun. Bond Securities Litigation*, Civ. A. No. MDL 863, 1992 WL 124786, at *1 (E.D. La. June 2, 1992) (Sear, J.).

[160] R. Doc. 11.

[161] *See*, *MTO Maritime Transport Overseas, Inc. v. McLendon Forwarding Co.*, 837 F.2d 215, 218 (5th Cir. 1988) ("F.R.Civ.P. 9(a) requires that a party desiring to raise the issue of capacity 'shall do so by specific negative averment.' It is settled law that failure specifically to plead capacity waives the right to object.") (citing authority); *Ralston Oil and Gas Co. v. Gensco, Inc.*, 706 F.2d 685, 692 (5th Cir. 1983) ("Under Fed. R. Civ. P. 9(a), it was incumbent upon Gensco to plead specifically that Ralston lacked the capacity or authority to recover for its absent principals. . . . The failure to plead lack of capacity waives the right to object.") (citing authority).

To the extent SBPG is asserting that Sewell lacked the capacity to enter into a contract on behalf of St. Bernard Trucking with SBPG on May 20, 2021, the Court likewise finds that SBPG has waived that defense. Rule 8(c) of the Federal Rules of Civil Procedure lists 19 affirmative defenses that must be set forth in a responsive pleading, including "any other matter constituting an avoidance or an affirmative defense."[162] "To qualify as a defense under Rule 8(c)'s residuary clause, courts look to the logical relationship between the defense and the cause of action and assess whether failure to timely plead the defense will result in unfair surprise."[163] The Fifth Circuit has held that failure to plead an affirmative defense constitutes a waiver of that defense.[164] In determining whether a party has waived an affirmative defense, the Fifth Circuit has advised that, "the defendant does not waive an affirmative defense if '[h]e raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond."[165]

Here, SBPG did not raise the issue of Sewell's alleged lack of capacity to contract on behalf of St. Bernard Trucking until the January 4, 2023 Final Pretrial Conference, on the eve of trial. It was not until *after* the Final Pretrial Conference, in a supplemental memorandum, that SBPG first articulated its defense of lack of capacity to contract. "Central to requiring the pleading of affirmative defenses is the

---

[162] Fed. R. Civ. P. 8(c)(1).

[163] *James v. McKenna*, Civ. A. No. 02-318, 2003 WL 21850644, at *3 (E.D. La. Aug. 4, 2003) (Duval, J.) (citing *Oden Oktibbeha County, Mississippi*, 246 F.3d 458, 467 (5th Cir. 2001); *Ingraham v. United States*, 808 F.2d 1075, 1079 (5th Cir. 1987)).

[164] *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999) (citing *Trinity Carton Co. v. Falstaff Brewing Corp.*, 767 F.2d 184, 194 (5th Cir. 1985)).

[165] *Lucas v. United States*, 807 F.2d 414, 417 (5th Cir. 1986) (quoting *Allied Chemical Corp. v. Mackay*, 695 F.2d 854, 855-56 (5th Cir. 1983)).

prevention of unfair surprise.[166]  Here, both the Court and Sewell were surprised by SBPG's arguments at the Final Pretrial Conference regarding Sewell's alleged lack of capacity to contract on behalf of St. Bernard Trucking.  The Court recognizes that SBPG raised the issue regarding Sewell's ownership of St. Bernard Trucking when it filed its Opposition brief on November 4, 2022, but notes that it did so "[a]s a brief aside."[167]  Notably, SBPG made no mention of a lack of capacity defense until it filed its Supplemental Memorandum on January 12, 2023.  The Court therefore finds that SBPG's "Hail Mary pass" fails because it waived this defense by failing to raise it in a timely manner.

Nonetheless, even if the Court had concluded that SBPG had not waived the defense of lack of capacity by failing to raise it in a timely manner, the Court finds that SBPG has waived this issue by not including it in the Pre-Trial Order.[168]  SBPG claims that it received a copy of the purported transfer of ownership document "in October of 2022 in discovery disclosures."[169]  SBPG, however, did not include Sewell's alleged lack of capacity as a contested issue of material fact in its Statement of Contested Facts, which was filed with its Opposition brief on November 4, 2022.[170] SBPG also failed to include Sewell's purported lack of capacity as a "Contested Material Fact[]" or a "Contested Issue[] of Law" in the parties' Pre-Trial Order, which was filed on January 4, 2023[171] and adopted by the Court on January 11, 2023.[172]  In

---

[166] *Ingraham*, 808 F.2d at 1079.
[167] R. Doc. 53 at p. 2.
[168] *See*, R. Doc. 80.
[169] R. Doc. 89 at p. 8.
[170] R. Doc. 53-1 at pp. 3-4.
[171] R. Doc. 80 at pp. 10-15.
[172] R. Doc. 86.

the Fifth Circuit, "It is a well-settled ruled [sic] that a joint pretrial order signed by both parties supersedes all pleadings and governs the issues and evidence to be presented at trial."[173] "The claims, issues, and evidence are narrowed by the pretrial order to expedite the proceeding."[174] According to the Fifth Circuit, "Once the pretrial order is entered, it controls the scope and course of the trial."[175] As a result, "If a claim or issue is omitted from the order, it is waived, even if it appeared in the complaint."[176] The Court has already determined that SBPG waived the lack of capacity to contract issue by failing to timely raise it. The Court now additionally finds that because SBPG did not include Sewell's alleged lack of capacity to contract on behalf of St. Bernard Trucking as an issue in the Pre-Trial Order, the issue is also waived.[177]

### C. Sewell is Entitled to Summary Judgment on His Breach of Contract Claim

In the First Amended Complaint, Sewell asserts a breach of contract claim against SBPG based upon SBPG's failure to pay for the work performed by St. Bernard Trucking under the contract in dispute.[178] To establish a breach of contract

---

[173] *Kona Technology Corp. v. Southern Pacific Transp. Co.*, 225 F.3d 595, 604 (5th Cir. 2000) (quoting *McGehee v. Certainteed Corp.*, 101 F.3d 1078, 1080 (5th Cir. 1996); *Branch-Hines v. Hebert*, 939 F.2d 1311, 1319 (5th Cir. 1991)) (internal quotation marks omitted).

[174] *Kona*, 225 F.3d at 604 (citing *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 206 (5th Cir. 1998)).

[175] *Kona*, 225 F.3d at 604 (*citing* Fed. R. Civ. P. 16).

[176] *Kona*, 225 F.3d at 604 (citing *Elvis*, 141 F.3d at 206; *Valley Ranch Dev. Co. v. FDIC*, 960 F.2d 550, 554 (5th Cir. 1992); *Flannery v. Carroll*, 676 F.2d 126, 129 (5th Cir. 1982)).

[177] Finally, if there need be a further nail in the coffin on SBPG's arguments, the Court recognizes that the "Transferred of Ownership," relied upon by SBPG for its entire argument regarding Sewell's capacity, states that the transfer of ownership occurred on May 5, 2021. *See* R. Doc. 53-20. The contract was entered into on May 20, 2021. *See* R. Doc. 80.

[178] R. Doc. 6 at ¶ 10.

claim under Louisiana law,[179] Sewell must allege and prove the existence of a contract, SBPG's breach of that contract, and resulting damages.[180]  Here, Sewell has alleged and proved the existence of a contract between St. Bernard Trucking and SBPG, SBPG has failed to raise a genuine issue of material fact regarding the existence of the contract, and the parties agree that, "On May 20, 2021, SBPG entered into that certain contract with St. Bernard Trucking for emergency drainage and sewage removal effective June 1, 2021."[181]  It is undisputed that St. Bernard Trucking performed all services requested under the contract[182] and that St. Bernard Trucking submitted reconciled invoices for the work performed between August 31, 2021 and September 24, 2021 totaling $1,665,661.48.[183]   In his Statement of Uncontested Material Facts, Sewell asserts that SBPG failed to pay St. Bernard Trucking for any of the services performed under the contract.[184]   SBPG does not dispute this contention in its statement of contested material facts,[185] and seems to admit in its Opposition brief that it has not paid St. Bernard Trucking for the work performed under the contract.[186]  Accordingly, Sewell has met his burden of proving that there is no genuine issue of material fact regarding the existence of a contract, SBPG's

---

[179] Although not addressed by the parties, because Sewell has invoked the Court's diversity jurisdiction over this matter (R. Doc. 6 at ¶ 2) and the parties raise state law issues, the substantive law of the forum state, Louisiana, applies.  *Keenan v. Donaldson, Lufkin & Jenrette, Inc.*, 529 F.3d 569, 572-73 (5th Cir. 2008) (citation omitted); *Wisznia Co., Inc. v. General Star Indem. Co.*, 759 F.3d 446, 448 (5th Cir. 2014).

[180] *1100 South Jefferson Davis Parkway, LLC v. Williams*, 2014-1326 (La. App. 4 Cir. 5/20/15), 165 So.3d 1211, 1216 (citing *Favrot v. Favrot*, 10-0986 (La. App. 4 Cir. 2/9/11), 68 So.3d 1099, 1108-09).

[181] R. Doc. 80 at p. 7.

[182] *Id.* at p. 8.

[183] *Id.* at p. 9; *See*, R. Docs. 49-7 through 49-11.

[184] R. Doc. 49-2 at pp. 4-5 (*citing* R. Doc. 49-3 at ¶¶ 10-11; R. Doc. 49-11).

[185] R. Doc. 53-1 at pp. 3-4.

[186] R. Doc. 53 at pp. 3-4 & 12.

breach of that contract, and resulting damages. Sewell is therefore entitled to summary judgment on its breach of contract claim against SBPG.

The Court further finds that Sewell is entitled to damages for SBPG's breach of contract in the amount of $1,665,661.48, as requested in his Motion, subject to any offset for payments made by SBPG directly to St. Bernard Trucking's subcontractors.[187] In a diversity case like this one, pre-judgment interest on a money judgment is determined by state law, while post-judgment interest on money judgments recovered in federal court is governed by federal law under 28 U.S.C. § 1961(a).[188] As explained by the Louisiana Supreme Court, "Unlike judgment in *ex delicto* actions wherein legal interest attaches from judicial demand, interest is recoverable on debts arising *ex contractu* from the time they become due, unless otherwise stipulated."[189] This pre-judgment interest "is meant to fully compensate the injured party for the use of the funds to which he is entitled but does not enjoy because the defendant has maintained control over the funds during the pendency of

---

[187] R. Doc. 49 at p. 1. *See*, R. Doc. 53 at pp. 3-4. The Court finds that awarding Sewell the original invoice amount of $1,802,669.16 would place Sewell in a better position that he would have been if SBPG had paid Sewell after Sewell submitted the reconciled invoices totaling $1,665,661.48 and sent SBPG a demand letter seeking $1,665,661.48. *See,* R. Doc. 6-3. That would violate Louisiana's general principle of expectation damages. *See*, *In re Bankston*, 749 F.3d 399, 405 (5th Cir. 2014) (citing *Gibbs Const. Co., Inc. v. Thomas*, 500 So.2d 764, 770 (La. 1987)).

[188] *Cave v. Davison*, Civ. A. No. 99-1989, 2001 WL 1098058, at *16 (E.D. La. Sept. 18, 2001) (Livaudais, J.) (citing authority).

[189] *Corbello v. Iowa Production*, 2002-0826 (La.2/25/03), 850 So.2d 686, 706, *superseded by statute on other grounds as stated in State v. Louisiana Land and Exploration Co.*, 2012-0884 (La. 1/30/13), 110 So.3d 1038; *Sharbono v. Steve Lang & Son Loggers*, 97-0110 (La. 7/1/97), 696 So.2d 1382, 1386 (citing authority). *See*, *IFG Port Holdings, LLC v. Lake Charles Harbor & Terminal Dist.*, Civ. A. No. 16-cv-146, 2022 WL 780926, at *4 (W.D. La. Mar. 14, 2022) (Kay, M.J.) ("the court finds that this action arises ex contractu for the purpose of computing judicial interest. The court therefore finds that interest should be calculated from the date of loss per the Port's submissions, not the date of judicial demand.").

the action."[190]   "In contrast, postjudgment interest is a prospective award whose purpose is to encourage prompt payment of amounts awarded in the judgment, *and* to compensate the victorious party for the other party's use of funds to which the victor was entitled under the judgment."[191]   The uncontroverted evidence before the Court shows that Sewell submitted reconciled invoices to SBPG totaling $1,665,661.48 for the work performed under the contract sometime between October 20, 2021 and November 5, 2021.[192]   The Court finds that Sewell is entitled to recover prejudgment interest on the damages for breach of contract from the date they became due to the date of judgment at the rate set forth in La. R.S. 13:4202, as well as post-judgment interest at the federal rate.

To the extent that Sewell seeks to recover attorney's fees "pursuant to Louisiana Revised Statutes § 9:2781,"[193] that statute is inapplicable in this case because Sewell has not asserted an open account claim in its First Amended Complaint.[194]   The First Amended Complaint contains only a breach of contract claim.[195]   Accordingly, the Motion is denied to the extent that Sewell seeks an award of attorney's fees.

---

[190] *Sharbono*, 97-0110, 696 So.2d at 1386 (citing authority); *Gravolet v. Fair Grounds Corp.*, 2009-0392 (La. App. 4 Cir. 7/14/04), 878 So.2d 900, 908 (citing *L & A Contracting Co. v. Ram Indus. Coatings, Inc.*, 1999-0354 (La. App. 1 Cir. 6/23/00), 762 So.2d 1223, 1238-39).
[191] *Sharbono*, 97-0110, 696 So.2d at 1386 (citing authority) (emphasis in original).
[192] *See*, R. Doc. 6 at ¶¶ 7-9; R. Doc. 6-2; R. Doc. 6-3 at p. 3; R. Doc. 80 at p. 9.
[193] R. Doc. 6 at ¶ 16.
[194] *See, generally*, R. Doc. 6.
[195] *Id*. at ¶ 10.

## IV.   CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the Motion for Summary Judgment of Plaintiff, filed by Barry Sewell[196] is **GRANTED in part and DENIED in part.**   The Motion is **DENIED** to the extent that Sewell seeks summary judgment on his request for attorney's fees under La. R.S. 9:2781.   The Motion is otherwise **GRANTED** and Sewell is entitled to judgment as a matter of law on its breach of contract claim against SBPG.

**IT IS FURTHER ORDERED** that Sewell shall have **ten (10) days** from the date of this Order to provide the Court with a proposed final judgment that is commensurate with this Order.   Sewell shall send the proposed final judgment to the Court's email address, efile-Vitter@laed.uscourts.gov.

New Orleans, Louisiana, February 3, 2023.

**WENDY B. VITTER**
**United States District Judge**

---

[196] R. Doc. 49.